LEMMON, Judge.
New Orleans Public Service, Inc. and James H. Nero, the owner and driver of a bus which collided into the rear of a cab driven by Stanley Krantz, Jr., appealed from a jury verdict and judgment in the amount of $18,000.00. Defendants admitted liability in the trial court and assert as the only issue on appeal the excessiveness of the award.
Krantz was hospitalized for 17 days after the August 2, 1968 accident. The treating physician diagnosed acute muscle strain in the cervical, thoracic, trapezius and lumbar areas, as well as a contusion to the front and side of the left knee. Krantz underwent physical therapy and diathermy treatments, and when he developed radiation of pain into his legs, the doctor placed him in traction for seven days.
After his discharge from the hospital, Krantz was treated as an outpatient for persistent soreness in his knee and for neck and back pain.
In a September, 1968 referral examination, an orthopedic specialist found no objective symptoms to substantiate Krantz’s residual complaints and recommended that he be continued on medication and observation for two to four weeks and then discharged to return to work.
During the night of October 2, 1968 Krantz became nauseated from the medicine. When he rushed to the bathroom, his left knee gave way. He was immediately re-admitted to the hospital for a period of seven days.
On October 11, 1968 the treating physician found no swelling in the knee and a full range of motion in that area, as well as in the neck and back. On the doctor’s advice, Krantz returned to work as a cab driver on October 16.
On October 29, 1968 the treating physician reported Krantz had no further difficulty in his neck or back and minimum residual symptoms referrable to his knee, which required no further treatment. He advised Krantz to return if the symptoms recurred.
In January, 1969 Krantz consulted another orthopedic specialist, who recorded complaints of neck discomfort and back pain upon bending or lifting, but found no functional disability in these areas. As to the major complaint of constant pain along the inner aspect of the left knee, the doctor noted presence of a mild joint effusion of the knee, as well as atrophy of the left leg denoted by measurement of a difference from the right leg of ^ inch in circumference at the thighs and calves. Upon palpation of the knee, the doctor found *446 acute tenderness along the joint line by-eliciting consistent subjective complaints when Krantz was tested in different positions. Since this finding is an indication of internal joint derangement, the doctor suggested a reevaluation in three to four months.
In May, 1969 Krantz again complained of constant knee pain which worsened with activity. The doctor noted atrophy, but no fluid, and again found consistent tenderness along the joint line.
The April, 1970 examination produced essentially the same results. The doctor diagnosed a torn semilunar cartilage on the basis of the consistent joint line tenderness.
Krantz thereafter accepted employment at a bakery. On October 19, 1970, after standing and other activities required in the new job had caused Krantz’s symptoms to worsen, the doctor prescribed anti-inflammatory medication.
Krantz subsequently returned to driving a cab. When he was examined in November, 1971, just prior to trial, the doctor found swelling but no atrophy. However, because of the consistent joint tenderness, the doctor maintained his opinion as to the probability of a torn semilunar cartilage.
Krantz had requested surgery, but since he was functional in his occupation, the doctor recommended against an operation, unless his problems and pain worsened. On the other hand, the doctor stated that cartilage does not heal itself and (if the diagnosis is correct) the present problems will remain. The doctor expressed a positive opinion that Krantz is not a malingerer.
At defendants’ request Krantz was examined in June, 1969 and November, 1971 by a third orthopedist, who reported no abnormal physical findings. This doctor stated, however, that Krantz’s complaints of discomfort might be related to a derangement or minor tearing of one of the cartilages of the knee. He expressed his opinion that Krantz could perform any work or physical activity that he desired.
Krantz total medical bills amounted to $1,421.80.
Krantz had worked primarily as a roofer and sheet metal worker for several years before establishing his own sheet metal business in 1964. In 1966 and 1967 he reported adjusted gross income from that business of $2,378.88 and $3,365.02, respectively.
In 1968 Krantz decided to supplement his roofing business income by driving a cab during slack periods. The accident occurred on his first day as a cab driver. He never returned to the roofing business, professing his inability to climb and to lift roofing materials.
Krantz reported adjusted gross income in 1968 of $1,628.46 from the roofing business and $251.73 from driving the cab. In 1969 and 1970 he reported adjusted gross income from driving a cab of $4,981.50 and $2,-860.00 respectively. During 1970 he worked five months at a bakery and received additional income.
We believe the sum of $1,500.00 will adequately compensate Krantz for the wages he lost between the date of the accident and the date of trial. We further believe he has not reasonably proved that he will sustain any future loss of wages or that his earning capacity has been impaired because of this accident.
Therefore, the jury award included approximately $15,000.00 in general damages. Although the back and neck injuries were very painful in the early stages, these resolved in several months without any residual disability. However, the knee problems continued up to the time of trial, and although the condition is not necessarily disabling and will not necessarily degenerate further, the testimony of the treating specialist fairly established that the condition will not improve. Krantz for three years exhibited a knee condition which *447 worsened with activity and improved with rest, as reflected by his problems when he attempted to work at the bakery. Apparently, the members of the jury based the award on their belief that Krantz will suffer intermittently with his knee for the remainder of his life,[1] depending- on the extent of his activity. We find no abuse of discretion in this conclusion. C.C. art. 1934(3).
The judgment is affirmed.
Affirmed.

. Krantz had a life expectancy of 35 years.